# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE

Assigned on Briefs February 26, 2025

## STATE OF TENNESSEE v. BRANDON LEE MAY

**Appeal from the Criminal Court for Knox County**
**No. 123940   Steven Wayne Sword, Judge**

**No. E2024-00761-CCA-R3-CD**



FILED

MAR 10 2025

Clerk of the Appellate Courts
Rec'd by

The Defendant, Brandon Lee May, appeals his Knox County Criminal Court convictions of possession of a firearm by a convicted felon, evading arrest, and criminal trespass, for which he received an effective sentence of fifteen years' incarceration. On appeal, the Defendant argues that the evidence adduced at trial was insufficient to sustain his convictions and that his sentence is excessive. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

W. MARK WARD, SP. J., delivered the opinion of the court, in which TIMOTHY L. EASTER and MATTHEW J. WILSON, JJ., joined.

J. Christian Stadler, III, Knoxville, Tennessee, for the appellant, Brandon Lee May.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Patrick Dugan, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald and Marissa Price, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual and Procedural History

On March 2, 2023, a Knox County Grand Jury returned a four-count indictment charging the Defendant with possession of a firearm by a convicted felon, evading arrest, possession of a Schedule I controlled substance, and criminal trespass. Prior to trial, the State filed a notice of its intent to seek enhanced punishment in which it noted that the Defendant had previously been convicted of one count of possession of a firearm by a

convicted felon and two counts of possession of ammunition by a convicted felon in the United States District Court for the Eastern District of Tennessee. Upon the State's motion, the trial court dismissed the charge of possession of a Schedule I controlled substance, and the Defendant's case proceeded to trial on the remaining charges on October 31, 2023.

## A. Trial

Officer Brandon Holland of the Knoxville Police Department ("KPD") testified that he worked primarily as a patrol officer in the South Knoxville area. On October 6, 2022, Officer Holland received a 911 call informing him that the Defendant and another individual had been seen near the Montgomery Village neighborhood. Officer Holland performed a records check and, upon seeing that the Defendant had multiple outstanding warrants for his arrest, drove to the Montgomery Village neighborhood. There, Officer Holland saw the Defendant and a woman walking along the side of a set of railroad tracks. Officer Holland pulled his marked police patrol vehicle "over the railroad tracks" and exited his vehicle wearing his police uniform. When the Defendant saw Officer Holland, he began running away from him. Officer Holland testified that he told the Defendant to "stop," and that "if he didn't stop, he would be tased." Officer Holland eventually caught up to the Defendant, whereupon the Defendant "stopped" and "went to the ground." Officer Holland placed the Defendant in handcuffs, helped him to his feet, and escorted him towards his patrol vehicle.

As Officer Holland attempted to search the Defendant's pockets, the Defendant attempted to flee a second time. After securing the Defendant, Officer Holland completed his search and found a revolver in the Defendant's front right pocket, which he noted contained "one spent casing" and several "live rounds." Officer Holland then placed the Defendant inside his patrol vehicle.

Video footage of the Defendant's arrest, taken from Officer Holland's body camera, was played for the jury. The video showed Officer Holland parking his patrol vehicle near the railroad tracks, exiting, and running towards the railroad tracks. The Defendant, who had been walking along the railroad tracks, ran away from Officer Holland. Officer Holland chased after the Defendant for approximately twenty seconds before stating, "I'm going to tase you." The chase continued for approximately ten more seconds before the Defendant appeared to stop running, whereupon Officer Holland instructed him to "get on the ground." After handcuffing the Defendant, Officer Holland helped the Defendant stand and walked him back to his patrol vehicle. Upon arriving back at the patrol vehicle, Officer Holland attempted to search the Defendant's pockets, at which point the Defendant attempted to run away again. Officer Holland restrained the Defendant and completed his search, recovering a firearm from the Defendant's pocket.

KPD Lieutenant Brian Dalton testified as an expert in forensic firearm and toolmark examination. On March 14, 2023, Lieutenant Dalton examined the firearm recovered from the Defendant upon his arrest. Lieutenant Dalton identified the firearm as a Harrington & Richardson brand revolver and, after test-firing it, concluded that it was fully operational. He also examined the ammunition found loaded within the firearm and concluded that one round had been previously fired, while the remainder were unfired.

Special Agent Blake Barham of the Norfolk Southern Railway Police Department identified the railroad tracks upon which the Defendant was arrested as being owned by Norfolk Southern Railway. Special Agent Barham explained that these tracks crossed through the Montgomery Village neighborhood and continued southward. Special Agent Barham testified that Norfolk Southern did not "give permission" for people "to walk down the railroad tracks," though he did not know whether the Defendant had ever been explicitly told not to walk along the railroad tracks. However, he noted that Norfolk Southern had recently posted visible "private property" signs at the railroad crossing and near "the opposite end" of the railroad tracks.

On cross-examination, Special Agent Barham stated that Norfolk Southern had previously had problems with signs being stolen. On further questioning by the trial court, Special Agent Barham also testified that because the railroad tracks crossed through a neighborhood, they could be considered as being located in a "public setting." However, he noted that the "right-of-way of the railroad is private" property and that Norfolk Southern had erected a fence along the "back side of Montgomery Village . . . at one time."

The State introduced certified copies of two judgments of conviction indicating that the Defendant had been previously convicted of two counts of aggravated burglary. The State then rested, and following a <u>Momon</u> colloquy, the Defendant elected not to testify and did not present further proof. Upon this evidence, the jury convicted the Defendant as charged.

### B. Sentencing Hearing

At the Defendant's December 15, 2023 sentencing hearing, the State introduced a presentence report and certified copies of the Defendant's prior convictions. The State requested that the trial court apply enhancement factor one, that the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, and enhancement factor eight, that the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. <u>See</u> Tenn. Code Ann. § 40-35-114(1), (8). In

- 3 -

support of this argument, the State noted that between 2012 and 2018, the Defendant was convicted of three counts of theft, two counts of aggravated burglary, two counts of driving with a revoked license, two counts of failure to appear, two counts of possession of ammunition by a convicted felon, one count of possession of a firearm by a convicted felon, and one count of attempted tampering with evidence. The Defendant also violated the terms of his supervised release following his convictions for possession of a firearm by a convicted felon and possession of ammunition by a convicted felon. The State further noted that the Defendant had a lengthy history of disciplinary violations while incarcerated. Accordingly, the State requested that the trial court sentence the Defendant as a Range II multiple offender and impose an effective sentence of fifteen years' incarceration.

The Defendant requested the trial court postpone his sentencing until the conclusion of two pending trials, which he stated could result in as many as three additional convictions. In the alternative, the Defendant argued that he would have the support of his mother and aunt if he were granted a probated sentence. He also noted that he had not used the firearm recovered from his possession to commit a crime. The Defendant further argued for leniency in sentencing to allow him the opportunity to seek mental health treatment for potential post-traumatic stress disorder symptoms. In his allocution, the Defendant stated that the way in which he had previously lived his life was "over" and that he was "going to try and continue to start rebuilding a new [life] one day at a time."

The trial court, after considering the Defendant's presentence report, the evidence and arguments presented at trial and at the sentencing hearing, the nature and characteristics of the Defendant's criminal conduct, the applicable enhancement and mitigating factors, and the Defendant's allocution, sentenced the Defendant as a Range II multiple offender. The trial court concluded that the Defendant's prior convictions and history of probation violations supported the application of enhancement factors one and eight. The trial court also found "some mitigation" from the Defendant's not using his firearm to commit a crime, his family support, and his statement of remorse. However, the trial court noted that the Defendant's sentence was not eligible for probation. The trial court thus imposed a sentence of fifteen years for the Defendant's conviction of possession of a firearm by a convicted felon and maximum sentences of eleven months, twenty-nine days and thirty days for the Defendant's misdemeanor convictions of evading arrest and criminal trespass, respectively. The trial court aligned the Defendant's misdemeanor convictions to run concurrently with his felony conviction, resulting in an effective sentence of fifteen years' incarceration.

The Defendant filed a timely but unsuccessful motion for new trial. This timely appeal followed.

## II. Analysis

On appeal, the Defendant argues that the evidence adduced at trial was insufficient to sustain his convictions and that his sentence is excessive. The State responds that the evidence was sufficient and that the trial court was within its discretion in imposing a midrange effective sentence of fifteen years' incarceration. We will address these arguments in turn.

### A. Sufficiency

The Defendant first challenges the sufficiency of the convicting evidence for his convictions of evading arrest, criminal trespass, and possession of a firearm by a convicted felon.[1] He argues that he "only heard to stop with the threat of being tased" and that he did eventually stop running away from Officer Holland, that there was no evidence to indicate that the Defendant was ever expressly told he did not have permission to enter the railroad track, and that the charges giving rise to the outstanding warrants which prompted Officer Holland to arrest him were eventually dismissed. The State responds that the evidence adduced at trial is sufficient to sustain each of the Defendant's convictions.

The standard of appellate review for a defendant's challenge to the sufficiency of the convicting evidence is deferential to the jury's verdict. State v. Lyons, 669 S.W.3d 775, 791 (Tenn. 2023). This court reviews such challenges in the light most favorable to the State and if, after drawing all reasonable inferences from the evidence adduced at trial in the State's favor, it appears that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," sufficient evidence exists to support the jury's verdict. Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts [in the evidence] in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Thus, in reviewing the sufficiency of the evidence, this court does not reweigh the evidence or substitute its own inferences for those drawn by the trier of fact, Dorantes, 331 S.W.3d at 379, as the jury's verdict of guilty resolves "questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence," State v. McKinney, 669 S.W.3d 753, 773 (Tenn. 2023) (citing State v. Majors, 318 S.W.3d 850, 867 (Tenn. 2010)). The defendant bears the burden of proving

---

[1] We have reordered the Defendant's arguments on this issue for clarity.

- 5 -

the insufficiency of the convicting evidence on appeal. State v. Thomas, 687 S.W.3d 223, 249 (Tenn. 2024) (citing State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000)).

The Defendant asserts that the evidence adduced at trial is insufficient to sustain his conviction of evading arrest. "[I]t is unlawful for any person to intentionally conceal themselves or flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person . . . [k]nows the officer is attempting to arrest the person; or . . . has been arrested." Tenn. Code Ann. § 39-16-603(a)(1). The Defendant concedes that Officer Holland drove a marked police patrol vehicle and wore his uniform when he arrived to arrest the Defendant. However, the Defendant argues that he stopped running away from Officer Holland after he "heard to stop with the threat of being tased."

Officer Holland testified that when the Defendant saw him exit his marked police patrol vehicle while wearing his uniform, the Defendant began running away from him. Officer Holland then gave chase to the Defendant and told him to "stop" and that "if he didn't stop, he would be tased." Officer Holland testified that he eventually caught up to the Defendant and the Defendant stopped running. Video footage taken from Officer Holland's body camera, which was played for the jury, supports this testimony. From this evidence, the jury reasonably concluded that the Defendant fled from Officer Holland and knew that Officer Holland was attempting to arrest him. Though the Defendant indeed stopped shortly after Officer Holland threatened to tase him, this does not negate the fact that he first fled Officer Holland's attempts to arrest him. This evidence is sufficient to sustain the Defendant's conviction of evading arrest.

The Defendant also challenges the sufficiency of the convicting evidence for his conviction of criminal trespass. "A person commits criminal trespass if the person enters or remains on property, or any portion of property, without the consent of the owner." Tenn. Code Ann. § 39-14-405(a). The Defendant argues that the evidence adduced at trial is insufficient to sustain his conviction for criminal trespass because there was no proof that he was ever "expressly told that he did not have permission to be on the track" and that Special Agent Barham testified that Norfolk Southern had previously had problems with its private property signage being stolen. However, the State was not required to prove whether the Defendant was "expressly told" he was not allowed to enter Norfolk Southern's private property; the State was simply required to show that Norfolk Southern owned the property and that the Defendant entered it without Norfolk Southern's consent.

Furthermore, Special Agent Barham testified that the railroad tracks near the Montgomery Village neighborhood were privately owned by Norfolk Southern Railway. He also noted that the railroad company did not "give permission" for people "to walk down the railroad tracks." Additionally, because the railroad tracks had recently seen

- 6 -

undesired activities and "illegal dumping," Norfolk Southern erected "private property" signage at two visible locations, one at the railroad crossing and another near "the opposite end of the railroad tracks," and fencing along the "back side of Montgomery Village." Officer Holland testified, and his body camera footage showed, that the Defendant was walking along the railroad tracks when he arrived and, when Officer Holland attempted to arrest the Defendant, the Defendant ran away from him. This evidence is sufficient to sustain the Defendant's conviction of criminal trespass.

Finally, the Defendant challenges the sufficiency of the convicting evidence for his conviction of possession of a firearm by a convicted felon. "A person commits an offense who unlawfully possesses a firearm" and "[h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon." Tenn. Code Ann. § 39-17-1307(B)(1). The Defendant argues that the evidence is insufficient to sustain his conviction because Officer Holland testified at trial that he would not have had cause to arrest the Defendant if it were not for the Defendant's outstanding arrest warrants. The Defendant notes that the underlying charges for these outstanding arrest warrants were ultimately dismissed, so "without these, there was no reason to stop" him.

The Defendant is not entitled to relief. When the Defendant was arrested, Officer Holland searched his pockets and recovered a firearm, which was introduced at trial, and the State concluded its proof by introducing certified copies of the Defendant's judgments of conviction for two counts of aggravated burglary, a crime of violence. Tenn. Code Ann. § 39-12-301(2)(C). This evidence is sufficient to sustain the Defendant's conviction of possession of a firearm by a convicted felon.

## B. Sentencing

The Defendant also argues that his effective sentence of fifteen years' incarceration is excessive. In support of this argument, the Defendant asserts that the trial court failed to accord sufficient weight to his mitigating proof. The State responds that the trial court did not abuse its discretion in imposing a within-range sentence.

This court reviews sentencing determinations under an abuse of discretion standard. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). Additionally, so long as the trial court imposes a sentence "within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles" of the Sentencing Act, the trial court's decision will be afforded a presumption of reasonableness. Id. These purposes and principles include imposing a sentence which is no greater than is justly deserved in relation to the seriousness of the offense. See Tenn. Code Ann. §§ 40-35-102(1), -103(2); see also State v. Imfeld, 70 S.W.3d 698, 708 (Tenn.

2002). While "the sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," it should also serve as an effective deterrent to those likely to violate the law. Tenn. Code Ann. §§ 40-35-102(3)(A), -103(4).

In fashioning a defendant's sentence, the trial court must consider: (1) the evidence adduced at trial and presented at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and any arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors listed in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the Tennessee Department of Correction and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b). The trial court is not required to make particularly detailed or lengthy findings; it is sufficient that the trial court "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis" for imposing the sentence. Bise, 380 S.W.3d at 706-07 (citing Rita v. United States, 551 U.S. 338, 356-57 (2007).

A trial court's error in the application of an enhancement or mitigating factor will not invalidate a defendant's sentence nor remove the presumption of reasonableness unless it appears from the record that the trial court wholly departed from the purposes and principles of the Sentencing Act. Bise, 380 S.W.3d at 707. In other words, a trial court's imposition of a within-range sentence will be upheld even in light of its misapplication of an enhancement or mitigating factor so long as there are other reasons consistent with the purposes and principles of the Sentencing Act. Id. The trial court is afforded discretion in its weighing of the enhancement and mitigating factors during sentencing, and a defendant's disagreement with the weight accorded these factors is not a valid ground for appeal. Id. at 706.

The Defendant was convicted of possession of a firearm by a convicted felon, a Class B felony. Tenn. Code Ann. § 39-17-1307(b)(2). Because the Defendant was classified as a Range II multiple offender, the appropriate sentencing range for this conviction was between twelve and twenty years. The Defendant was also convicted of evading arrest, a Class A misdemeanor with a maximum sentence of eleven months, twenty-nine days, and criminal trespass, a Class C misdemeanor with a maximum sentence of thirty days. Tenn. Code Ann. §§ 39-16-603(d)(1), 39-14-405(g), 40-35-111(e)(1), (3). The trial court, after considering the Defendant's presentence report, the evidence and arguments presented at trial and at the sentencing hearing, the nature and

- 8 -

characteristics of the Defendant's criminal conduct, the applicable enhancement and mitigating factors, and the Defendant's allocution, imposed a within-range sentence of fifteen years' incarceration for the Defendant's conviction of possession of a firearm by a convicted felon. The trial court also imposed maximum sentences for the Defendant's misdemeanor convictions to run concurrently with the Defendant's felony conviction, resulting in an effective sentence of fifteen years' incarceration. We will, therefore, accord the trial court's sentencing determination the presumption of reasonableness.

The sum of the Defendant's argument on appeal is that the trial court gave insufficient weight to the mitigating proof he presented at his sentencing hearing. However, the 2005 amendments to the Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008). Accordingly, the Defendant's disagreement with the trial court's weighing of the mitigating evidence is not a valid ground for relief. Id. at 345; Bise, 380 S.W.3d at 706. We find no basis to conclude that the trial court abused its discretion in imposing a midrange effective sentence of fifteen years' incarceration.

### III. Conclusion

Following our review, we affirm the judgments of the trial court.

s/ W. MARK WARD
W. MARK WARD, SPECIAL JUDGE